FILED & ENTERED

MAR 03 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher     DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Mark Alan Shoemaker<br><br><br><br>Debtor(s).<br><br>_____<br><br>U.S. Trustee<br><br>Plaintiff(s),<br>v.<br><br>Mark Alan Shoemaker<br><br><br>Defendant(s). | CHAPTER 7<br><br>Case No.:  1:14-bk-15182-GM<br>Adv No:   1:14-ap-01206-GM<br><br>**TENTATIVE RULING RE: U.S. TRUSTEE'S MOTION TO STRIKE IMMATERIAL, IMPERTINENT AND SCANDALOUS MATTER FROM DEFENDANT'S FIRST AMENDED COMPLAINT (Dkt. #125)**<br><br>Date:  March 1, 2016<br>Time:  10:00 a.m.<br>Courtroom:   303 |

        Below is the Court's Tentative Ruling in connection with U.S. Trustee's Motion

to Strike Immaterial, Impertinent And Scandalous Matter From Defendant's First

Amended Complaint:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Shoemaker makes a series of assertions that all arise from the same basic scenario: because the Chapter 7 Trustee (Alfred Siegel, Siegel, or Trustee) did not timely pursue claims that Advocate (and to some extent Shoemaker personally) had against third parties, the bankruptcy estate did not collect on these valuable assets and Shoemaker was damaged.  The damage comes in the form of both his potential liability to his creditors, who (he asserts) could have been paid in full through the amounts recovered and his own loss of the excess assets beyond those amounts. He links this to the United States Trustee (referred to herein as the Plaintiff and/or the UST), who both actively participated in depriving Shoemaker of these assets and also conspired with Siegel.  Thus, he contends, that he has asserted equitable affirmative defenses against the Plaintiff, who is estopped and who also has unclean hands.

Assuming that all of these allegations can be proven, the basic question facing the Court is whether they could provide Shoemaker an affirmative defense against the denial of his discharge.  With the exception of the statute of limitations, the Court believes that they could not.

Federal Rule of Civil Procedure 12(f)(1) (made applicable to bankruptcy cases in Fed.R.Bankr.P. 7012) states that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  While a party can trigger this by motion, the court can also do this on its own.  Thus it is not bound by the theories of a party.

Black's Law Dictionary defines an affirmative defense as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's

claim, even if all the allegations in the complaint are true." Black's Law Dictionary 482 (Bryan A. Gamer ed., 9th ed. 2009).

The second amended complaint seeks to deny discharge under §§727(a)(2), (a)(3), and (a)(4). After going through the procedural history of continued §341(a) meetings and extensions of time to file the complaint, it asserts the following facts as to undisclosed asset transfers:

1. one or two sizeable gifts to now ex-girlfriend Caroline Violan in Sept-Oct 2009 - specifically a $2,120.63 purchase of jewelry from Tiffany & Co.;

2. a transfer of $5,000 to Ms. Violan, which he labeled as a loan, but was not listed as an account receivable in his schedules;

3. receipt of $23,516.83 from George McFarland Trust II - his grandparents' testamentary trust.

Debtor also did not provide information on bookkeepers and accountants and thus he has been unable to provide supporting documentation or additional information on the source of opening deposits for Citibank acct. 0665 or the disposition of a post-petition cash withdrawal of $20,000.

Defendant said that he had no other contingent or liquidated claims.  These were included in amended bankruptcy schedules filed about 6/20/12.  The amended schedules increased the gross amount of Shoemaker's personal property assets from $480,000+ to $12,290,000+.  He increase the stated value of his ownership interest in Advocate for Fair Lending LLC (Advocate) from $0 to $400,000 and the amount of accounts receivable due to him from $460,000+ to $1.6+ million.  The complaint then includes a list of pre-petition "other contingent and unliquidated claims" that the Debtor

disclosed for the first time in the amended schedules.  These are generally the same items that were the basis of the various adversary proceedings filed in this case.

Based on these later disclosures or discoveries, the complaint seeks to deny discharge under §727(a)(2)(A) on the grounds that the Debtor intended to hinder and delay the Chapter 7 trustee by concealing property, namely the beneficial interest in the testamentary trust.  Under §727(a)(2)(B) by taking the testamentary distribution, he intended to hinder the Trustee in carrying out his duties.  Similarly, by failing to reveal the $10+ million in other assets for two years after the case was filed, he also violated §727(a)(2)(B).  There were other assets that he did not reveal for two years - interest in Advocate claims, accounts receivable and office equipment, etc. for law offices and for Advocate.

Proposed Ruling as to §727(a)(2):  *All of these alleged acts took place at the time of the bankruptcy petition or were the continuation of the concealment after the petition was filed.  They had nothing whatsoever to do with the affirmative defenses asserted by Shoemaker and there is no way that the affirmative defenses could defeat them.*

The second claim for relief is under §727(a)(3) and asserts that Shoemaker falsified, concealed, or failed to keep records, etc. from which his financial condition or business transactions could be ascertained.  In the second amended complaint, the Plaintiff asserts that the Debtor is a sophisticated business person and that he has no records of how the money from his sole bank account was spent, that he cannot account for the source of deposits, that he has no records concerning an alleged loan that he made to his then girl-friend for her business, that he has no records of work done on his real property in Lake Elsinore, and that he failed to identify those in

possession of his books and records.  The UST has inquired before this litigation for these details, but Shoemaker has not provided them

*Proposed Ruling as to §727(a)(3)*:  *All of these alleged acts took place prior to or at the time of the filing of the bankruptcy petition.  They had nothing whatsoever to do with the affirmative defenses asserted by Shoemaker and there is no way that the affirmative defenses could defeat them.*

The third claim for relief is under §727(a)(4)(A) - that in connection with the bankruptcy case the debtor knowingly and fraudulently made a false oath or account. The second amended complaint alleges that at various times in the petition and schedules and post-petition, the Debtor falsely testified under oath as to the accuracy of his petition and schedules and statement of affairs and as to other matters described above.  For example, initial petition and schedules listed "none" for SOFA items #7 and #10, and for Schedule B items #20 and 21.  These were all false statements as shown when two years after the filing of the bankruptcy the Debtor amended his schedules and revealed these hidden assets.

*Proposed Ruling as to §727(a)(4)(a)*: *All of these alleged acts took place at the time of the filing of the bankruptcy petition or early in the case when Shoemaker was being examined under oath.  They had nothing whatsoever to do with the affirmative defenses asserted by Shoemaker and there is no way that the affirmative defenses could defeat them.*

The fourth claim for relief is under §727(a)(4)(D) asserting that in connection with the bankruptcy case the debtor withheld from an officer of the estate who was entitled to

have it any recorded information relating to the debtor's property or financial affairs.

The second amended complaint repeats the same allegations of many of the acts as

described above.

Proposed Ruling as to §727(a)(4)(D): *Although these alleged acts took place*

*after the filing of the bankruptcy petition, they had nothing whatsoever to do with the*

*affirmative defenses asserted by Shoemaker and there is no way that the affirmative*

*defenses could defeat them.*

Debtor argues that in granting his motion to amend, the Court determined the

viability of the affirmative defenses.  This is not correct.  Rather, the Court specifically

stated in its tentative ruling (doc. 111, p. 16):

"Shoemaker is asserting the UST's behavior as a defense in unclean hands,

waiver, and equitable estoppel.  Mr. Brownstein's actions may be relevant to the

relying upon advice of counsel defense.  And the administration of the estate

arguably might become relevant in a materiality defense.  Thus, it appears wise

to defer consideration of this motion [as to discovery] until the scope of

Shoemaker's affirmative defense are [sic] resolved by the motion to strike."

Looking at the specific paragraphs that are the subject of this motion to strike, the

Court finds as follows:

¶¶ 27, 28, 29, 30, 31, 43, 44, 45, 46, 47, 142, 143, 144, 145, 146, 242, 243. 244. 245.

246. 247, 248, 249, 250, 251 – these are part of a statute of limitations defense, which

is the burden of the defendant.  The statute of limitations is jurisdictional and if it is

violated that will defeat the complaint even if every allegation in the complaint is proven. It may be that the actual facts do not legally support such a defense, but I cannot decide that in a motion to strike. That will be decided in a motion for summary judgment based on the undisputed facts or at trial. DENY THE MOTION TO STRIKE AS TO THESE PARAGRAPHS.

As to all of the other alleged affirmative defenses, the Court will grant the motion for the reasons stated above.

For clarity the paragraphs which will be stricken are as follows:

¶¶ 84, 118, 185, 207, 370 – Here Shoemaker is reporting on a hearing on June 14, 2012 before Judge Donovan and what he had told those present (the Judge, Plaintiff, and Siegel).  The sentences that the UST wishes stricken are that Plaintiff told the Judge that the Plaintiff had spent 3 hours with Grobstein and 3 staff going over Advocate's potential claims and their value.  The motion to strike asserts that the content of the statement is factually incorrect.  As to the relevance, Shoemaker asserts that this goes to the affirmative defenses of reliance on counsel and unclean hands.  I do not see how these statements relate to reliance on counsel.  As to unclean hands, whether the employees of the OUST spent time going over the Advocate files or not, does not seem relevant.  As noted above, Shoemaker is really asserting that substantial sums of money would have been recovered if the UST or Trustee had pursued these Advocate claims in a timely fashion.  However, that is not an affirmative defense to a denial of discharge.  The Debtor is required to comply with the requirements of the bankruptcy code.  It is not a situation of "no harm, no foul."

¶¶ 95, 96, 97, 98, 99, 119, 120, 121, 122, 123, 208, 209, 210, 211, 212, 334, 335, 336, 337, 338, 371, 372, 373, 374, 375 – This is part of the estoppel defense.  Shoemaker asserts that there was a compromise on June 14, 2012 in which the Plaintiff "specifically represented that it would not interfere with Siegel's pursuit of litigation claims to bring money into the estate."  Shoemaker alleges that he agreed with this based on the UST's representation that it would not interfere and that Siegel would in good faith pursue the litigation claims to bring money into the estate.  Shoemaker alleges that he did not know the true intentions of the Plaintiff which he claims were to prevent any money from coming into the estate with the sole and obvious intent to damage Shoemaker and to make sure that he did not realize any money that he earned prior to the bankruptcy.  Shoemaker pleads that the UST made these representations in open court and based on them Shoemaker dismissed his counter-claims against Siegel.  As noted above, this is not an affirmative defense to a §727 action.

¶¶ 101, 102, 103, 104, 127, 128, 129, 130, 216, 217, 218, 219, 220, 340, 341, 342, 343, 344, 378, 379, 380, 381 – These deal with the dismissal of Debtor's counterclaim against the Trustee.  Debtor claims that after dismissal the UST continued to interfere with proceeding to collect on the claims held by Advocate by instructing Siegel to dismiss certain cases and to make sure that very few of the cases reached settlement or judgment.  Since many of the cases resulted in a default, it would have been easy to reach a judgment and Shoemaker gives specifics as to at least one case.  Shoemaker alleges that he would never have agreed to dismiss the counterclaim against Siegel if he had been told the Plaintiff "honestly represented it planned to use any schedule

amendments by Defendant as a further basis for a 727 claim…." As noted above, this is not an affirmative defense to a §727 action.

¶¶ 106, 195, 358 – Plaintiff is barred from relief due to violation of conscience, good faith, and other equitable principles including unclean hands. As noted above, this is not an affirmative defense to a §727 action.

¶¶ 110, 199, 362 – Plaintiff conspired with Siegel and the Bar and others to hinder and delay the marshalling of assets into the estate. As noted above, this is not an affirmative defense to a §727 action.

¶¶ 112, 201, 234, 349, 364, 386 – Siegel admitted in a declaration dated 12/2/10 that he has been working with the Plaintiff to determine whether to file a §727 action. The UST states that this is not what the declaration says. It discusses that Siegel and the UST were each conducting their own investigation into the underlying facts and each concluded that additional time was needed. It also is confusing because it refers to "a Section 727 of Section 707 action." As noted above, this is not an affirmative defense to a §727 action.

¶¶ 130, 219, 381 – Shoemaker alleges that the Plaintiff's actions and conspiracy were solely to prevent assets from coming into the estate because it knew that the assets were so large that Shoemaker would receive most of the money after the claims were paid. As noted above, this is not an affirmative defense to a §727 action.

¶¶ 206, 369 – On 5/11/12, Shoemaker sent a proposal to the UST prior to trial of this case and of Shoemaker's counterclaims against Siegel set for 6/14/12.  The UST says this is immaterial, impertinent and incorrect since there was no trial set at that time.  As noted above, this is not an affirmative defense to a §727 action.

¶¶ 241, 356 – Shoemaker asserts that based on the Plaintiff's "insidious and dishonorable conduct," the Plaintiff should be estopped from pursuing its claim against him.  As noted above, this is not an affirmative defense to a §727 action.

Date: March 3, 2016

_____
Geraldine Mund
United States Bankruptcy Judge